## PEDRO J. BESOSA

*v.*

## GENEROSO CANDINA.

Law, No. 553.

1. A complaint setting out the existence of a partnership and the volun-

Besosa v. Candina.

tary action of the partners in incorporating it, its subsequent dissolution, and damage to plaintiff (a minority stockholder) because of a loss of future profits, is bad on demurrer.

2. Promises made without a consideration are void.

Opinion filed July 31, 1908.

*Mr. N. B. K. Pettingill,* for plaintiff.

*Messrs. Hartzell & Rodriguez Serra,* for defendant.

RODEY, Judge, delivered the following opinion:

The issue before us is raised by the demurrer of the defendant to the complaint. The suit is for alleged violation of a contract, and damages are claimed in the sum of $15,000. The matter was fully argued by counsel for the respective parties, and thereafter they each filed before us somewhat extensive written arguments. Neither counsel has cited us to any authority or adjudged case in point, each appearing to proceed upon the idea that the matter is so simple that the court ought to be able to decide it on general principles.

It is a most peculiar case. Shortening the allegations of fact in the complaint, they are about as follows:

That the plaintiff and defendant had been, for a couple of years previous to June, 1907, engaged as partners in the business of buying, selling, and manufacturing drawn work, embroideries, fancy needle work, and other linen products, under the firm name of the Porto Rico Drawn Work & Embroidery Company. That their main object was to increase and extend said business, so as to introduce their goods on a large scale into

the United States. That the business had been growing continually, but its income had been put back into the business, and that it had become valuable and capable of still greater development. That about the month of June, 1907, the parties agreed that a corporation should be formed, and that they would transfer their partnership business to it, and take its stock in payment therefor. That under this plan, as agreed to between the parties, the defendant agreed to secure an increase in the capital to be invested in the business by the sale of stock in the corporation to his friends and others, and thus enable said corporation to carry out its original object of introducing its products and business into the United States. That, under the plan as outlined, the defendant would become a holder of the majority of the stock in the corporation, and that, in order to induce plaintiff to consent to the plan, and in order to assure plaintiff of the continuance of the business in accordance with said original plan, the defendant promised and agreed that he would use the power which he would have as the holder of the majority of the stock in the proposed corporation so that the business would be so extended and introduced into the United States, where it could be carried on with greater success and profit. That, so induced by this statement of the defendant, and relying upon his agreement, the plaintiff agreed to join the defendant in the formation of such a corporation, which was accordingly done, on July 3d, 1907, and immediately thereafter their partnership business was transferred to the corporation, each taking his proper proportion of stock for his interest in the partnership. That, in this way, plaintiff became the owner of 70 shares of the stock, and the defendant became the owner of 250 shares, but that 40 shares belonging to each

party remained unissued. That the 210 shares thus issued to defendant was a large majority of all the shares ever issued by the corporation. That, after the making of this agreement and the formation of the corporation, plaintiff repeatedly asked defendant and the other officers of the corporation to comply with defendant's agreement to get this additional capital and introduce the business into the United States, the plaintiff himself always offering to help do this. That defendant wholly failed to do this or carry out the agreement, but that, instead, the defendant caused the corporation to be dissolved and the business to be discontinued, he voting his 210 shares of stock to bring about such dissolution over the protest of plaintiff, and that therefore the business was wound up and ended, and defendant put it out of his power to carry out his said agreement. That, by reason of this, plaintiff has been damaged because of the termination of the partnership business between himself and the defendant, and by the destruction of the value of his stock interest in the corporation, and because of the loss of profits he would have made therefrom, and hence he claims judgment for the sum of $15,000 and costs.

Counsel for defendant claims that, under this statement, even giving it the benefit of every intendment, his client is not liable. That it does not show, but, by inference, negatives, that any consideration moved from plaintiff to defendant for the making of any such alleged promise or agreement. That, at most, the statement only shows that the parties, who were then conducting a business, agreed, presumably for their mutual benefit, to change the form of conducting it, and that one of them agreed to try and get his friends to buy stock in the new concern. That the statement does not show that there was any promise or obli-

gation that either of the partners should purchase any stock or additional interest in the corporation to be organized, or put any additional money into it more than they then had in the partnership. That it does not show that the defendant did not, in fact, make all the efforts he could to secure additional capital through sales of stock to his friends and others, but that it does show that the discontinuance of the corporation was. brought about by the corporation's own board of directors, and that above all, the whole statement does not show that any damage was caused to plaintiff by reason of the change, that would not have occurred or taken place if the partnership had been continued.

Defendant further contends that, before he can be held liable, the complaint must set out the conditions of the actual partnership, how long it had to run, and what plaintiff's interest in it was, and whether defendant was obliged to continue it with him for any particular length of time, etc., and what damage, if any, plaintiff in fact sustained by the change. He further contends that the alleged promise that he would interest his friends in the purchase of stock should be set out in detail.

We have examined the chapter on the law relating to the question of consideration in the American and English Encyclopædia of Law, 2d ed. vol. 6, beginning at page 667, and are somewhat astonished, on refreshing our mind by reading it, at the insistency with which the law holds that there must be a consideration of some kind for the making of every promise or contract. On page 674 it is stated that "the reason of the rule rests upon expediency, for when it is considered how lightly and thoughtlessly gratuitous promises are often made, it is deemed better to let them rest upon the mere integrity and

Besosa v. Candina.

good faith of the parties who made them, rather than by subjecting them to the compulsory authority of the law, to bind men to ruinous engagements into which they may have been hastily and inconsiderately drawn." It is further said on the next page of that work that "although this principle has long been too well settled to admit of doubt, its application has nevertheless been a fruitful source of litigation. It would be unnecessary, if not impossible, to set forth all the cases of gratuitous promises the enforcement of which has, from time to time, been sought; but in the note below will be found some of the most striking instances, which will serve as illustrations of the principle."

Then follow, in the note, references to many cases, showing the necessity for consideration, and setting forth many cases where one would think there was a sufficient consideration moving between the parties, yet the courts held the alleged agreement to be *nudum pactum*.

In common with counsel for both parties, we are at a loss for a specific direct authority, but, after reading the argument of counsel for defendant, and carefully examining the complaint, we do not think it is sufficiently specific to show that the defendant ever made any promise for which there was legal consideration that he would in law be liable for the breach of.

We can well see how a complaint might be drawn, even in a case like this, that might, perhaps, avoid the objections here made, if it should fully set out the original partnership agreement, how long it had to run, the interest of each partner in the concern, etc., and then the exact consideration that moved from plaintiff to defendant to induce the latter to help organize the corporation and transfer his property to it, and, further, the

Besosa v. Candina.

exact kind of a promise which defendant made, that he would get additional capital for the new concern, as well as the effort, if any, he made to secure it, etc.   Ordinarily a defendant can get the details or items on which a cause of action is based by · calling for a bill of particulars, but that is in cases where an undoubted cause of action has been stated.

We are not saying that we would not sustain a demurrer to it, even then, on further argument; but, until the complaint is so amended as to, in some proper manner, apprise defendant of what he is liable for, we think the demurrer ought to be sustained.

Therefore, unless the complaint is so ·amended within five days from this date, the demurrer will stand sustained, and the complaint will stand dismissed, with costs, without further action of the court, and it is so ordered.